# United States Court of Appeals
## For the First Circuit

No. 20-1029

UNITED STATES OF AMERICA,

Appellee,

v.

JEAN C. TORRES-MELÉNDEZ,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

---

Before

Thompson, Kayatta, and Barron,
Circuit Judges.

---

Alejandra Bird López, Research and Writing Specialist, with whom Eric Alexander Vos, Federal Public Defender, and Franco L. Pérez-Redondo, Assistant Federal Public Defender, Supervisor, Appeals Division, were on brief, for appellant.
David C. Bornstein, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were brief, for appellee.

---

March 21, 2022

---

**THOMPSON**, **Circuit Judge**.  One winter day in 2018, Puerto Rico police officers went to a public housing project looking for a car involved in a murder.  They wore plain clothes but had their guns and police IDs visible.  Spotting a group of people hanging around outside, the officers approached and identified themselves.  A man who turned out to be Jean Torres-Meléndez grabbed something from his waistband and took off.  Ducking into an apartment building, Torres (as we will call him, per Spanish naming customs) tossed a machine gun — a modified Glock pistol — from a stairwell balcony and gave himself up.  Officers later found the gun, which had 1 bullet in the chamber and an attached magazine with 14 bullets.  They also took from him a couple of magazine clips, each holding 19 bullets.

After some preliminaries (not relevant here), Torres pled guilty without a plea deal to illegally possessing a machine gun.[1]  See 18 U.S.C. § 922(o)(1).  That crime carries a top prison term of ten years.  See id. § 924(a)(2).  At sentencing, the district judge set Torres's base offense level at 20, see USSG § 2k2.1(a)(4)(B), and subtracted 3 levels for acceptance of

---

[1] This is as good a place as any to say that the background facts come from the uncontested parts of the probation office's presentence investigation report ("PSI," for short) and from the transcripts of the key court hearings.  See, e.g., United States v. Ilarraza, 963 F.3d 1, 5 (1st Cir. 2020).

responsibility, see id. § 3E1.1(a), (b), which generated a total offense level of 17. Cross-referencing that level with Torres's criminal history category I yielded an advisory prison range of 24 to 30 months.

Torres sought a term of 24 months. The government sought 30 months. Pointing to Torres's "juvenile adjudications" for domestic violence and aggravated burglary and his two adult arrests on weapons and narcotics charges, the judge stated that "[t]he record reflects" his "violent tendencies" — to which Torres's lawyer objected. The judge agreed that she "should have better characterized that," but then did nothing to clarify the violent-tendencies remark. And the judge ended up varying the sentence to 60 months, stressing (with italics ours) that she adjusted the advisory term because of

> the type of weapon that was possessed, the conditions in which possessed, the lack of reasons for a person unemployed, being a drug addict, and with the problems he has . . . encountered, that has *a track record of engaging in drug offenses and weapon violations, and his prior arrest record dismissed at state level on speedy trial grounds*, and . . . the circumstances that Puerto Rico faces due to the problem caused by the illegal possession of weapons.

From this sentence Torres appeals, raising a multifaceted objection to the procedural and substantive reasonableness of the judge's decision. Applying abuse-of-

- 3 -

discretion review, see United States v. Dávila-Bonilla, 968 F.3d 1, 9 (1st Cir. 2020), we begin — and find we can end — with his procedural-reasonableness claim.  And we need only address one of his many procedural-reasonableness arguments at that.  See United States v. Cruz-Ramos, 987 F.3d 27, 39 (1st Cir. 2021) (explaining that the "simplest" way to handle a case is often the "best" way); PDK Labs. Inc. v. DEA, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) (noting that "if it is not necessary to decide more, it is necessary not to decide more").

As an "[i]ndependent" basis for vacating his sentence, Torres — hyping the italicized phrase in the block quote above — insists that the judge wrongly considered prior arrests not resulting in convictions in varying upward (exactly *two times* the top of the guidelines range).[2]  The government says that this aspect of the judge's sentence "explanation" *seems*

_____

[2] Convinced that Torres did not raise this challenge below, the government declares that we can review only for plain error. But like Torres, we think the defense's objection to the judge's violent-tendencies comment adequately preserved the issue.  See United States v. Rivera-Berríos, 968 F.3d 130, 134 (1st Cir. 2020) (repeating that "[t]o preserve a claim of procedural sentencing error . . . a defendant's objection need not be framed with exquisite precision").  So we need not consider any arguments premised on plain error.  The government also calls Torres's arguments here "undeveloped."  They are not.

"problem[atic]." But to us it *is* problematic — and in a reversible error kind of way.

What little we know about the two at-issue arrests comes from the PSI. The first was a 2010 arrest on local weapons charges. The PSI called the "circumstances" surrounding this arrest "[u]nknown" because "the files were destroyed" after the commonwealth court dismissed the matter on speedy-trial grounds. The second was a 2014 arrest on local drug charges. The PSI said the "charging documents" alleged Torres "illegally, maliciously, voluntarily and with criminal intent, possessed heroin and cocaine." The commonwealth court also dismissed that case for lack of a speedy trial.

We do not doubt that the judge considered Torres's (supposed) "track record of engaging in" drug and weapon offenses integral to her overall sentencing rationale. We also do not doubt that the judge's track-record rationale shows she treated proof of arrest as proof of guilt — without highlighting any corroborating evidence that the underlying conduct actually occurred. And therein lies the flaw. The Federal Reporter, after all, is filled with our cases holding that "when an arrest has not ripened into a conviction," a sentencer *cannot* "rely on that arrest in a manner that equates the arrest with guilt." See United States v. Díaz-Lugo, 963 F.3d 145, 153 (1st Cir. 2020); accord Dávila-Bonilla,

- 5 -

968 F.3d at 9 (citing a number of opinions). This is because "proof only of an arrest is *no* proof of guilt." United States v. Marrero-Pérez, 914 F.3d 20, 23 (1st Cir. 2019) (emphasis added). Which means that a sentencer *cannot* "rely on an arrest record as evidence of a defendant's conduct" absent "some reliable indication that the underlying conduct actually occurred." See Díaz-Lugo, 963 F.3d at 153; accord United States v. Castillo-Torres, 8 F.4th 68, 71-72 (1st Cir. 2021) (listing a string of decisions and "find[ing] it unsurprising that many of our admonitions against the use of unsupported allegations in mere charges contain no hint that they should apply only to some forms of sentence enhancement and not others").

The judge talked up how each charge got dismissed on a speedy-trial technicality. If the judge thought that this somehow gave credibility to the arrest allegations, she is mistaken. Torres notes — without any contradiction from the government — that "local speedy-trial dismissals are without prejudice to refiling" if prosecutors "deem[] it warranted" and that the record reveals nothing "about why local authorities did not prosecute [him]." And our opinions mince no words in stating that a judge "imposing incarceration for a later crime cannot simply presume that past charges resolved without conviction . . . are attributable to flawed or lax prosecutorial or judicial systems

- 6 -

rather than the defendant's innocence."  See United States v. Rondón-García, 886 F.3d 14, 26 (1st Cir. 2018) (quoting United States v. Cortés-Medina, 819 F.3d 566, 576-77 (1st Cir. 2016) (Lipez, J., dissenting)).

The bottom line is that because the judge gave "weight" to arrests not backed "by convictions or independent proof of conduct," Torres's sentence cannot stand.  See Marrero-Pérez, 914 F.3d at 22.  And the government's arguments to the contrary do not hold up, as we now explain.

The government's lead-off claim is that the judge "correct[ly]" concluded "that Torres has 'a track record of engaging in drug offenses.'"  This is so, the government says, "because, by his own admission, [Torres] has possessed, consumed, and been addicted to marijuana for most of his life."  Context is the key to understanding language, all can agree.  See United States v. Saccoccia, 10 F.4th 1, 9 (1st Cir. 2021) (stating that "in legal matters, as in life, '[e]verything depends on context'" (alteration in original and quoting Rivera-Velásquez v. Hartford Steam Boiler Inspection & Ins. Co., 750 F.3d 1, 5 (1st Cir. 2014))).  And pulling back the lens, we see that while the judge noted Torres's "known history of substance abuse," she (among other things) keyed in on his "prior *arrests* for possession of controlled substances and weapons violations" as evidence that he had "violent

tendencies" (our emphasis) — which showed up in "early-on stages" where he "began to deal . . . either drugs or weapons."

Taking a different tack, the government claims that the judge rightly referred to the 2010 weapons arrest to counter Torres's mitigating argument that he possessed the Glock only because "he was the innocent victim of a shooting" in 2012 (*i.e.*, the idea being that he carried the gun only for self-defense). And Torres's "2010 arrest," the theory continues, gives reason to doubt "his self-serving claim" that he carried the Glock simply because of what went down two years later "in 2012." But even accepting the government's hypothesis, the arrest is only relevant for that purpose if the charge were true. So again, we are left with a judge giving "weight" to a bare arrest without sufficiently corroborative evidence — which, as we have been at pains to stress, is prohibited. See Marrero-Pérez, 914 F.3d at 22.[3]

The government also makes much of the judge's saying at one point (emphasis ours) that "the fact that [Torres] *might* have been involved in 2010, 2014, with weapons and drugs, is there." But the government can get no mileage out of "might" — particularly since the judge (when push came to shove) specifically called

---

[3] That the judge reversibly equated arrest with guilt undercuts the government's footnoted suggestion that she may have properly used the 2010 weapons arrest to "show[] that he knew that the law regulated whether he could freely possess them."

Torres's "track record of *engaging in* drug offenses and weapons violations" a driving force in her sentence selection (emphasis supplied).  And as if to make this more emphatic, the judge (italics added) made sure to say that "if you look at" Torres's infractions "that you have, he *has been so involved* in 2010, 2014." Which brings us back to the point that judges cannot "rel[y] on arrests as a proxy for criminal culpability or the likelihood of recidivism."  See id. at 23; accord Dávila-Bonilla, 968 F.3d at 9 ("implor[ing]" judges not to use "mere charges to infer unlawful behavior unless there is proof by a preponderance of the evidence of the conduct initiating [those] arrests and charges" (alteration in original and quotation marks omitted)).

All that is left to say then is that we **vacate** Torres's sentence and **remand** for resentencing.[4]

---

[4] The parties can pursue on remand the other issues suggested in their briefs that (as noted earlier) we need not explore today (assuming those other issues remain relevant).