# United States Court of Appeals
## For the First Circuit

No. 21-1747

UNITED STATES,

Appellee,

v.

ÁNGEL RAMOS-CARRERAS,

Appellant, Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Kayatta, Howard, and Thompson,
Circuit Judges.

José D. Rodríguez, with whom Eric Alexander Vos, Federal
Public Defender, and Franco L. Pérez-Redondo, Assistant Federal
Public Defender, were on brief, for appellant.

Gregory B. Conner, Assistant United States Attorney, with
whom W. Stephen Muldrow, United States Attorney, and Mariana E.
Bauzá-Almonte, Assistant United States Attorney, were on brief,
for appellee.

January 26, 2023

**THOMPSON, Circuit Judge**.  The defendant Ángel Ramos-Carreras ("Ramos") challenges the sentence the district court judge imposed after revoking his term of supervised release. Finding plain error, we reverse and remand for resentencing.

## BACKGROUND

First, some background to set the context:  In 2011, pursuant to a plea agreement, Ramos received a five-year prison sentence and eight years of supervised release for violating 21 U.S.C. §§ 841(a)(1), 846, 860, conspiracy to distribute narcotics (here, cocaine).  Fast forward to 2020, when Ramos was serving his term of supervised release.  In October, local authorities arrested him "for an investigation on lewd acts," and charged him with violating Article 133 of the Puerto Rico Penal Code.[1]  While those proceedings were underway in the Commonwealth court, the U.S. Probation Office filed a motion in the federal district court to notify it about the Commonwealth's prosecution and to allege Ramos

---

[1] Article 133 of the Puerto Rico Penal Code classifies the following conduct as a third-degree felony:  "Any person who without the intention to consummate the crime of sexual assault [by penetration] submits another person to an act that tends to awaken, excite or satisfy the sexual passion or desire of the accused, under any [one of six enumerated] circumstances," including the age of the victim as less than 16 years. United States v. Cordero-Rosario, Crim. No. 11-556, 2018 WL 8798610, at *2 & n.5 (D.P.R. Nov. 8, 2018), report and recommendation adopted, 2019 WL 3137453 (D.P.R. July 15, 2019) (quoting P.R. Laws Ann. Tit. 33, § 4772).

had violated the "shall not commit another federal, state, or local crime" condition of his supervised release.

Ramos waived the preliminary hearing and a magistrate judge found probable cause that Ramos had violated this condition of release as alleged in the probation officer's motion. At sentencing -- now before a district court judge -- all agreed the guideline sentencing range for this supervised-release-condition violation was four to ten months. Ramos requested nine months, arguing the initial charge had been ultimately reduced to an attempt for "one incident with a 15-year-old step-daughter, touching over her clothes." The government requested three years (which reflected the maximum sentence allowed pursuant to 18 U.S.C. § 3583(e)(3)) based on Ramos' perpetration of a "crime . . . against nature" and because Ramos had been given "a break" for an earlier revocation of supervised release for a "minor violation" (when he'd failed to report to probation in the early days of the COVID-19 pandemic). The district judge revoked Ramos' term of supervised release and imposed a three-year term of imprisonment to be followed by a three-year term of supervised release.

Before announcing the sentence, the district judge acknowledged that Ramos had signed a plea agreement in the Commonwealth court for attempting to commit lewd acts in violation of Article 133 and that Ramos had been sentenced by the Commonwealth court to five years' imprisonment to be served

- 3 -

consecutively to any other sentence.  The district judge commented that the Commonwealth's sentence "was with aggravating factors but the minority of the victim was eliminated" and that "[t]he attempt was against his own 15-year-old-daughter whom he had registered as his daughter when she was born.  He touched and sucked on her left breast and then touched and squeezed her vagina over her clothing."

At the end of the hearing, Ramos' counsel stated a broad objection "to the [c]ourt imposing the absolute maximum sentence as being substantively, procedurally unreasonable."  This was the only objection to the length of the sentence raised during the hearing.  A week or so later, Ramos filed a motion for reconsideration on the basis that the court may have misunderstood Ramos' relationship to the complaining witness as that of a biological father-daughter relationship when she was not actually biologically related to Ramos, and as a result the "violation of trust" was "not as aggrieved as the court may have understood."[2] In the motion, Ramos described "the facts of th[e Commonwealth's] conviction [as] based on Mr. Ramos's admitted behavior of touching a fifteen-year-old female in a sexual manner for sexual gratification."  The district judge summarily denied the motion.

_____

[2] Ramos had been dating the complaining witness' mother when she was born.  He agreed to be listed as her father on the birth certificate and provided support to them during his relationship with her mother and for a period of time after they no longer lived all together.

- 4 -

On appeal, Ramos asserts that his upwardly variant sentence is procedurally and substantively unreasonable, focusing primarily on the district judge's statement and use of graphic allegations of the offense from the Commonwealth court's record when these asserted details were not part of the record before him. Before we consider this argument, however, we note that Ramos has not properly preserved it for our review. We typically review the reasonableness of a criminal sentence under the abuse-of-discretion standard. United States v. Millán-Isaac, 749 F.3d 57, 66 (1st Cir. 2014) (citing Gall v. United States, 552 U.S. 38, 51 (2007)). But merely stating a broad objection to the procedural and substantive reasonableness of a sentence at the end of a sentencing hearing does not preserve Ramos' specific arguments before us about the district judge's rehearsal of the factual allegations because, during the hearing, Ramos did not raise any objection to the court's description of the alleged conduct for his Commonwealth court conviction. See United States v. Castillo, 981 F.3d 94, 101 (1st Cir. 2020) ("[S]uccessful preservation of a claim of [sentencing] error for our consideration on appeal requires that a party object with sufficient specificity such that the district court is aware of the claimed error."); United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017) ("A general objection to the procedural reasonableness of a sentence is not

sufficient to preserve a specific challenge to any of the sentencing court's particularized findings. To preserve a claim of error for appellate review, an objection must be sufficiently specific to call the district court's attention to the asserted error." (citations omitted)). We therefore find Ramos' particular argument forfeited and proceed to review it for plain error only. See Soto-Soto, 855 F.3d at 448. "Under the plain error standard, the appellant must show '(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings.'" Id. (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).

"[A] district court has broad discretion at sentencing to consider information pertaining to the defendant and the defendant's offense conduct." Millán-Isaac, 749 F.3d at 69 (citing United States v. Zavala–Martí, 715 F.3d 44, 54-55 (1st Cir. 2013)). That said, it is axiomatic "that a convicted defendant has the right to be sentenced on the basis of accurate and reliable information, and that implicit in this right is the opportunity to rebut the . . . evidence and the information" to be considered by the court. United States v. Rivera-Rodríguez, 489 F.3d 48, 53 (1st Cir. 2007) (quoting United States v. Blackwell, 49 F.3d 1232, 1235 (7th Cir. 1995)). A district court's use of new information (meaning information not already found in the district court's

record) that is significant (meaning "materially relied on" by the district court in determining a sentence) can be reversible error. Id. at 54-56; see Millán-Isaac, 749 F.3d at 73; United States v. Berzon, 941 F.2d 8, 10 (1st Cir. 1991). "Although revocations of probation, parole, or supervised release are not considered part of a criminal prosecution, they nevertheless entail a loss of freedom and a deprivation of liberty" and as such include the same due process and fairness considerations. United States v. Correa-Torres, 326 F.3d 18, 22 (1st Cir. 2003).

We zero in on Ramos' contention that the district judge procedurally erred by improperly relying on factual allegations that were not in the record when he imposed the upwardly variant sentence -- that Ramos "touched and sucked on [the victim's] left breast and then touched and squeezed her vagina over her clothing." Ramos posits these asseverations came from the initial charging document filed in the Commonwealth court -- which would have been written in Spanish -- and so represents a violation of the Jones Act.[3] The government suggests we can rule out the district judge's reliance on the Spanish-language charging document because the

---

[3] The district court's consideration and use of an untranslated Spanish-language document at sentencing is a reversible error. United States v. Reyes-Rivas, 909 F.3d 466, 469-70 (1st Cir. 2018) (citing 48 U.S.C. § 864, which provides that "[a]ll pleadings and proceedings in the United States District Court of the District of Puerto Rico shall be conducted in the English language")).

document is not in the record and the district judge did not explicitly mention it during the sentencing hearing.  The source of the asserted details then, suggests the government, must be from a conversation with the probation officer.

Because the source of the district judge's knowledge of these purported facts is not revealed in the record, we cannot conclude that the district court committed a Jones Act violation.  As the government suggests, the district judge could have learned the alleged information from a conversation with the probation officer.  But this explanation has its own problem:  As the government admits, the district court may not rely on new facts learned in its conversations with the probation officer that are relevant to -- and indeed become part of -- the sentencing calculus if not revealed beforehand.  See United States v. Marrero-Pérez, 914 F.3d 20, 25 (1st Cir. 2019) ("Ex parte communication between the probation officer and the court is usually permissible where the court is merely seeking advice or analysis . . . and the probation officer and the court may consult privately about certain issues incident to criminal sentencing, [b]ut where the probation officer discloses new facts that bear on the judge's sentencing calculus, the general rule requires disclosure to the defense in advance of the sentencing hearing and an opportunity to subject the new material to whatever adversarial testing may be appropriate." (internal quotation marks and citations omitted)).

While the record does not identify the source of the extra-record allegations about the incident between Ramos and the minor child, the district judge had to learn the allegations from somewhere and someone because he recited these purported details on the record as facts related to the substantive conduct on which the Commonwealth court conviction was based. Contrary to the government's contention that the district judge's statement did not reveal "new facts" because Ramos did not object or express surprise about them, the averments were brand new to the record in the revocation proceedings. The record at the time of sentencing includes no indication that he admitted to more than attempted lewd behavior, a category that includes misconduct far less salacious than that described by the extra-record allegations on which the district court relied. The motion notifying the court of the alleged violation simply stated that local law enforcement picked Ramos up "for an investigation on lewd acts" and that a week later the probation officer confirmed the original version of the facts with the agent in charge of the investigation. At the hearing, the only indication of detail by Ramos' counsel about the prosecution in the Commonwealth court was when he stated that the "initial charge was reduced to an attempt which I understand from talking to different State Public Defenders is fairly unusual. There was one incident with a 15-year-old step daughter, touching over her clothes." Moreover, Ramos had no notice that the district

judge was in the loop on any of the purported details of the initial charge against him in the Commonwealth court, information about the investigation, or the conduct to which he ultimately pled guilty. He therefore had no notice that the district judge might take any allegations into account other than those contained in documents from probation or admitted to in court when fashioning the sentence for his violation of the condition that he would not commit another crime during his term of supervised release. Reciting extraneous non-record avowals without identifying the source or providing notice to Ramos that these asserted details would be considered in determining his sentence for the condition at issue was a clear error.[4] See Millán-Isaac, 749 F.3d at 73 (holding that when the defendant did not have notice of "extra-record information," the district court's use of that information to fashion the defendant's sentence amounted to a reversible error); accord Berzon, 941 F.2d at 10 (remanding for clarification when the defendant had not been provided notice of extra-record factual details that the sentencing judge may have considered when fashioning the sentence imposed).

---

[4] Ramos' statement in his motion for reconsideration -- "the facts of th[e Commonwealth's] conviction [as] based on Mr. Ramos' admitted behavior of touching a fifteen-year-old female in a sexual manner for sexual gratification" -- does not affect our conclusion on this prong. The statement -- made after the sentencing hearing -- simply parrots the broad offense described in the statute of conviction. See Cordero-Rosario, 2018 WL 8798610, at *2 & n.5; P.R. Laws Ann. Tit. 33, § 4772.

Whether this clear error affected Ramos' substantial rights requires deciding whether the "error was prejudicial in the sense that 'it must have affected the outcome of the district court proceedings.'" United States v. Gilman, 478 F.3d 440, 447 (1st Cir. 2007) (quoting United States v. Olano, 507 U.S. 725, 734 (1993)). We conclude that the inflammatory details about Ramos' alleged conduct affected the district judge's sentencing decision because it is clear he did not ignore this provocative, extra-record characterization of the incident when he imposed the 26-month upward variance from the high end of the undisputed guidelines range. That he articulated these specific, vivid allegations immediately before imposing the sentence shows they were clearly at the front of his mind and indicates he was justifying the upward variance at least in part (if not completely) with them. See Millán-Isaac, 749 F.3d at 73 (holding the court's "demonstrated interest" in the extra-record information indicated a reasonable likelihood that the "erroneous consideration" of this information affected the court's sentencing decision). Finally, as we have noted before, the disregard for a defendant's right to notice of the information on which the district court will base a sentence imposed "cannot help but have a denigrating effect on the fairness, integrity, and public reputation of judicial proceedings." Id. (quoting United States v. Mangone, 105 F.3d 29, 36 (1st Cir. 1997)). We therefore conclude that the district

judge's use of the alleged facts from the Commonwealth court's prosecution of the charge against Ramos to determine Ramos' sentence was plain error.

## CONCLUSION

Ramos' sentence is vacated and remanded.[5]  The Clerk of the District Court is directed to assign this case to a different judge on remand, see 28 U.S.C. § 2106, for prompt resentencing based on the existing factual record, supplemented if appropriate by evidence of events that occurred after the date of the most recent prior sentencing.[6]

---

[5] Ramos makes other arguments about the procedural unreasonableness of his sentence but we need not weigh in on the merit of those arguments because we are already remanding for resentencing based on the extra-record allegations used by the district court.  In addition, Ramos mentions that his sentence is substantively unreasonable but does not develop any argument on this front so this part of his challenge is waived.  See United States v. Pérez-Vásquez, 6 F.4th 180, 204 n.18 (1st Cir. 2021), cert. denied sub nom. Enamorado v. United States, 142 S. Ct. 1211 (2022).

Ramos also briefs a second issue, arguing that the district judge plainly erred when he imposed the following three special conditions of supervised release:  (1) prohibiting employment in places where he could have contact with children; (2) mandating compliance with any sex-offense-specific testing arranged by the Probation Officer; and (3) prohibiting contact with any child under the age of 18 unless specifically allowed by the Probation Officer. The parties can explore these issues on remand, assuming they remain relevant.  See United States v. Torres-Meléndez, 28 F.4th 339, 340-41, 342 n.4 (1st Cir. 2022) (remanding for resentencing because the district court abused its discretion when it considered prior arrests not resulting in convictions to vary upward from the guidelines, stating "[t]he parties can pursue on remand the other issues suggested in their briefs that . . . we need not explore today (assuming those other issues remain relevant)").

[6] This court allows "additional factfinding where the Government did not have an incentive to present evidence" during the initial sentencing process but does not "'permit a second bite at the apple'" when "'the government asked for the enhancement but failed to adduce sufficient proof

for its imposition.'" United States v. Román-Huertas, 848 F.3d 72, 78 (1st Cir. 2017) (quoting United States v. Montero-Montero, 370 F.3d 121, 124 (1st Cir. 2004)); see also United States v. Reyes-Rivas, 909 F.3d 466 (1st Cir. 2018); United States v. Ramos-Gonzalez, 775 F.3d 483, 508 (1st Cir. 2015) (both cases relying on the same principle regarding the scope of resentencing). In this case, the government is not entitled to a second chance to justify a request (if any) for an upward variance from the 4-10 month guidelines sentencing range based on the details of the Commonwealth court's conviction because it had the opportunity and incentive to support its request at the most recent prior sentencing hearing but stuck to vague characterizations of Ramos' conduct.

However, the parties are entitled to offer any additional admissible information about events or developments that occurred after the most recent prior sentencing hearing. See Pepper v. United States, 562 U.S. 476, 504 (2011); United States v. Serrano-Berríos, 38 F.4th 246, 251 (1st Cir. 2022).