# United States Court of Appeals
## For the First Circuit

No. 21-1884

UNITED STATES OF AMERICA,

Appellee,

v.

BRIAN ALEXIS DIAZ-SERRANO, A/K/A "RETRO",

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Montecalvo and Lipez, Circuit Judges.
Burroughs,* District Judge.

Christopher DeMayo, with whom Law Office of Christopher
DeMayo was on brief, for appellant.

David C. Bornstein, Assistant United States Attorney, with
whom W. Stephen Muldrow, United States Attorney, and Mariana E.
Bauzá-Almonte, Assistant United States Attorney, were on brief,
for appellee.

August 10, 2023

* Of the District of Massachusetts, sitting by designation.

**MONTECALVO, <u>Circuit Judge</u>.** Defendant-appellant Brian Diaz-Serrano ("Diaz") pleaded guilty to one count of knowingly carrying, brandishing, or discharging one or more firearms during and in relation to a kidnapping resulting in a crime of violence pursuant to 18 U.S.C. § 924(c)(1)(A)(iii), a conviction that carries a statutory minimum sentence of 120 months. At sentencing, and pursuant to his plea agreement, Diaz joined the government in recommending a sentence of 210 months. The court rejected the recommendation on the grounds that it "d[id] not reflect the seriousness of the offense, d[id] not promote respect for the law, d[id] not protect the public from further crimes by Mr. Diaz and d[id] not address the issues of deterrence and punishment." Instead, the court sentenced Diaz to 240 months' -- double the statutory minimum. This timely appeal followed.

On appeal, Diaz contends that the district court's upwardly variant sentence was procedurally and substantively unreasonable because the court (i) relied on judicially found facts to justify an otherwise substantively unreasonable sentence; (ii) relied on prior arrests to justify the upward variance; and (iii) imposed a sentence that created an unwarranted sentencing disparity between Diaz and a similarly situated co-defendant. Having discerned no error, we affirm.

- 2 -

## I.    Background

Because this sentencing appeal follows a guilty plea, we draw the relevant facts from the plea agreement, the undisputed portions of the change-of-plea colloquy, the presentence investigation report ("PSR"), and the sentencing record.[1]  United States v. Melendez-Rosado, 57 F.4th 32, 36 (1st Cir. 2023) (quoting United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009)).

On June 8, 2018, Diaz participated in the kidnapping and murder of a rival gang member, referred to by the parties as WGE. That day, Diaz traveled with members of his gang to the public housing complex where WGE lived.  Armed with guns, they forced WGE out of his home and into a Toyota Camry, in which he was transported to Barrazas Ward.  Diaz also traveled to Barrazas Ward, but in a different vehicle.  While he remained in the car, Diaz witnessed members of his gang shoot and kill WGE.  Diaz and a co-defendant, Jadnel Flores-Nater, then "burnt the Toyota Camry under a bridge."[2] A witness later reported that before Diaz "met with other codefendants to pick up the victim," he "received a phone call ordering the murder of victim WGE."  WGE was targeted because he had been threatening members of Diaz's gang.

---

[1]     Diaz raised no objections to the PSR.

[2]     According to the PSR, "[a]s verified with federal agents, Mr. Diaz's participation in the offense was taking the victim from his home to commit the murder.  At the moment of the murder, he remained in the vehicle and he possessed a firearm."

On August 19, 2020, Diaz and his four co-defendants were charged in a three-count superseding indictment (the "indictment") with the kidnapping and murder of WGE. The indictment charged Diaz with (i) kidnapping resulting in death in violation of 18 U.S.C. § 1201(a)(1) and (2); (ii) using, carrying, brandishing, and discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and (2); and (iii) using, carrying, and discharging a firearm during and in relation to a crime of violence causing murder in violation of 18 U.S.C. § 924(j)(1) and (2).

On June 18, 2021, Diaz entered into a plea agreement whereby he pleaded guilty to count two of the indictment -- using, carrying, brandishing, and discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) -- and in exchange, the government agreed to dismiss the two remaining counts.[3] Although the parties acknowledged that the guidelines recommendation for the single count was 120 months' imprisonment (the statutory minimum under § 924(c)(1)(A)(iii)), the parties agreed "upon considering the dismissal of the remaining counts" to jointly recommend an above-guidelines sentence of 210 months. Finally, Diaz stipulated to the statement of facts that had been incorporated into the plea agreement and recited by the

---

[3] Diaz preserved his right to appeal any sentence exceeding 210 months' imprisonment.

government at his change-of-plea hearing.  The court accepted Diaz's change of plea.

Ahead of sentencing, Probation prepared a PSR, which Diaz reviewed and to which he raised no objections.  The PSR noted that Diaz had four prior arrests but no prior convictions.  It therefore indicated that Diaz had a criminal history score of zero, placing him in criminal history category I.  Given that Diaz's conviction carried a mandatory minimum sentence, the PSR noted -- consistent with the joint calculation in the plea agreement -- that the guideline sentence was the minimum term of imprisonment governed by statute, here 120 months'.

At sentencing, Diaz and the government jointly recommended an upwardly variant sentence of 210 months.  Diaz defended the recommendation before the court.  He argued that the ninety-month increase over the guidelines recommendation of 120 months adequately accounted for the gravity of the offense conduct. Diaz also sought to reinforce the reasonableness of his recommendation by comparing it to the 194 months' sentence the court imposed on his co-defendant, Roberto Melendez-Hiraldo ("Melendez").  Diaz told the court that Melendez had admitted to identical facts, but that Melendez's prior convictions placed him in a higher criminal history category.

Still, the court rejected the joint recommendation, concluding that it "d[id] not reflect the seriousness of the

offense, d[id] not promote respect for the law, d[id] not protect the public from further crimes by Mr. Diaz and d[id] not address the issues of deterrence and punishment."  Instead, the court sentenced Diaz to 240 months' incarceration to be followed by five years of supervised release.  The court explained:

> The Court will sentence Mr. Diaz concerning his participation in the offense by receiving the order to kill the victim, whose initials are WGE, transporting the victim from his home to the location where he would commit the murder and as part of . . . what Mr. Diaz and the other defendants did.  He, along with another of the defendants, burned a Toyota Camry, one of the vehicles used in the offense.

The court also described the factual details of the kidnapping and murder.  Diaz objected to the reasonableness of the sentence, noting that the jointly recommended 210 months' imprisonment already represented a 42.85% increase over the statutory minimum, and that the 240 months' sentence imposed by the court reflected another 12.5% increase.  He argued that this was unreasonable, particularly where Melendez had received a 194 months' sentence.  This discrepancy, Diaz suggested, represented an unwarranted sentencing disparity.  But the court rejected this notion by identifying factual differences in the two cases.  It noted that unlike Melendez, Diaz (i) received a call ordering the murder of the victim and (ii) "participated in the burning of the Camry in which . . . the victim had been placed when they went to

Barrazas, and it appears to be an attempt to get rid of any [evidence of the] participation of any of the members in the Camry in the murder of the victim." Diaz sought reconsideration on the grounds that these factual differences were already accounted for in the recommended 210 months' sentence, which exceeded Melendez's actual sentence by sixteen months. The court declined to reconsider, and this appeal followed.

## II. Discussion

On appeal, Diaz challenges the procedural and substantive reasonableness of his sentence. We begin by reviewing for procedural error. Only if the sentence is procedurally sound do we review it for substantive reasonableness. United States v. Rossignol, 780 F.3d 475, 477 (1st Cir. 2015).

### A. Procedural Reasonableness

Because Diaz did not preserve his procedural reasonableness claims below, we review them for plain error. United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

### 1. Judicial Fact Finding

Diaz argues that the court erred by imposing an upwardly variant sentence based on judicially found facts.[4] He contends that the facts established by his guilty plea cannot alone justify

---

[4] The court relied on two facts from the unobjected to PSR: that (i) Diaz received a call ordering the murder of WGE, and (ii) after the murder occurred, Diaz participated in burning the Camry that had transported WGE to the park where he was killed.

the 120 months' variance and that absent the court's reliance on unobjected to facts contained in the PSR, the 240 months' sentence would have been substantively unreasonable and thus unable to stand.

Diaz roots his argument in the Sixth Amendment requirement, articulated in United States v. Booker, that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 543 U.S. 220, 244 (2005). Diaz contends that the court violated this principle by relying on judicially found facts to impose a sentence that would otherwise have been substantively unreasonable. See Dillon v. United States, 560 U.S. 817, 828 (2010).

But this misapprehends the constitutional limits on judicial fact finding set out in Booker. At sentencing, a court's reliance on judicially found facts presents Sixth Amendment concerns only when those facts bind the court to a particular sentencing outcome, such as triggering a mandatory minimum, or increase a defendant's sentencing exposure beyond the legal maximum for the offense. Rita v. United States, 551 U.S. 338, 352 (2007) ("The Sixth Amendment question [addressed in Booker] is whether the law forbids a judge to increase a defendant's sentence

- 8 -

unless the judge finds facts that the jury did not find (and the offender did not concede)."); Booker, 543 U.S. at 244. These concerns are not implicated, however, when a court relies on judicially found facts to guide its exercise of "broad discretion in imposing a sentence within a statutory range." Booker, 543 U.S. at 244. Because Diaz's sentence is within the statutorily authorized range, the court's reliance on judicially found facts does not present a Sixth Amendment issue here. We therefore discern no error.

## 2. Arrests

Next, Diaz argues that his sentence was procedurally flawed for the independent reason that the court erroneously relied on his prior arrests to justify the upward variance.[5] To be sure,

---

[5] The government argues that Diaz forfeited his prior arrests-based claim because his opening brief failed to analyze the fourth prong of plain-error review. In this case, we disagree and find plain-error review applies. While failure to make a sufficient argument as to one plain-error prong may constitute waiver of the claim of error, the Supreme Court, in Rosales-Mireles v. United States, 138 S. Ct. 1897, 1905-06 (2018), held that an appellant's failure to satisfy the fourth prong is ordinarily not fatal when appealing a sentencing error. Id. Indeed, in Rosales-Mireles, the Supreme Court recognized that "[i]n the ordinary case, proof of a plain [g]uidelines error that affects the defendant's substantial rights is sufficient to meet [the defendant's] burden" on the fourth prong of the plain-error standard, id. at 1909 n.4, because "what reasonable citizen wouldn't bear a rightly diminished view of the judicial process and its integrity if courts refused to correct obvious errors of their own devise that threaten to require individuals to linger longer in federal prison than the law demands?" Id. at 1908 (quoting United States v. Sabillon-Umana, 772 F.3d 1328, 1333-34 (10th

in formulating an appropriate sentence, the district court cannot give "'weight' to arrests not backed 'by convictions or independent proof of conduct.'" United States v. Torres-Meléndez, 28 F.4th 339, 341 (1st Cir. 2022) (quoting United States v. Marrero-Pérez, 914 F.3d 20, 23 (1st Cir. 2019)). Although treating an arrest not resulting in a conviction as an aggravating factor at sentencing constitutes plain error, "sentencing courts are not prohibited from simply recounting a defendant's arrest history" at sentencing. United States v. Santa-Soler, 985 F.3d 93, 96 (1st Cir. 2021). Simply put, if the record shows the court considered Diaz's arrests when formulating its sentence, then the "sentence cannot stand." See Torres-Meléndez, 28 F.4th at 341. But the record is not so clear here where the court mentioned the arrests in discussing the guidelines sentence but not in weighing the § 3553(a) factors nor in explaining its decision. Indeed, even Diaz concedes that "it is not certain from the transcript whether the judge relied on the arrests or not." Nevertheless, Diaz argues that we should treat the court's decision to read the arrests into the record as de facto evidence of reliance. Although we do not find such an inference implausible, we see no way it can

---

Cir. 2014)). Because Diaz argued the first three prongs of plain error, we find no basis for concluding that his failure to discuss the fourth prong should mean he has forfeited his challenge to the procedural reasonableness of the sentence here.

support a finding here that the court plainly erred. Accordingly, the constraints of plain-error review leave us no choice but to reject Diaz's claim of procedural error.

### B. Substantive Reasonableness

Having found Diaz's sentence procedurally sound, we now turn to its substantive reasonableness. Diaz claims that his sentence is substantively unreasonable, and thus must be vacated, because it far exceeds the sentence imposed on his equivalently culpable and similarly situated co-defendant, Melendez, without an adequate rationale for the disparate sentences. Because Diaz preserved this challenge, we review the court's sentencing decision for abuse of discretion, we review its findings of fact for clear error, and we review its conclusions of law de novo. United States v. Reverol-Rivera, 778 F.3d 363, 366 (1st Cir. 2015).

When crafting a sentence, the court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). While "this provision is primarily aimed at national disparities," a sentence may be substantively unreasonable if "two identically situated defendants receive different sentences from the same judge." United States v. Reyes-Santiago, 804 F.3d 453, 467 (1st Cir. 2015) (quoting United States v. Rivera-Gonzalez, 626 F.3d 639, 648 (1st Cir. 2010)). This is because such an arbitrary disparity undermines

- 11 -

"the linchpin of a reasonable sentence," that is, a "plausible sentencing rationale" that produces a "defensible result." Rivera-Gonzalez, 626 F.3d at 647 (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)).

For a disparity to be arbitrary and thus unwarranted, however, the defendant-appellant and the more leniently sentenced co-defendant cannot be materially different in any respect that could influence the court's sentencing decision. United States v. Gonzalez, 981 F.3d 11, 23 (1st Cir. 2020) ("When defendants' circumstances are materially different, a claim of sentencing disparity will not wash."). Establishing a co-defendant as an appropriate comparator may be a challenge given "the myriad factors that come into play at sentencing." Reyes-Santiago, 804 F.3d at 467.

For example, we have rejected disparity-based claims where one co-defendant pleaded guilty and the other went to trial, United States v. Rodríguez-Lozada, 558 F.3d 29, 45 (1st Cir. 2009), where one co-defendant had a leadership role in the criminal conduct and the other did not, González-Barbosa, 920 F.3d at 130-31, and where the frequency of offense conduct varied among co-defendants, Gonzalez, 981 F.3d at 23. We have also noted that factual differences based on information revealed in a co-defendant's PSR can undermine an assertion of unwarranted disparity where the facts support varying degrees of culpability.

See, e.g., Reverol-Rivera, 778 F.3d at 366-67; Rivera-Gonzalez, 626 F.3d at 648.

To be sure, Diaz and Melendez shared many similarities at sentencing. Both were charged with the same conduct and pleaded guilty to the same offense. They also stipulated to identical facts and were sentenced by the same judge.

Citing this overlap, Diaz contends that nothing in the record explains the additional forty-six months on his sentence as compared to Melendez. In fact, Diaz argues that Melendez's higher criminal history score, if anything, would justify Melendez receiving a harsher relative sentence. Given that the same court sentenced Melendez to 194 months' incarceration, Diaz argues that the highest defensible sentence the court could have imposed here was 210 months' -- the sentence the parties jointly recommended -- and that anything exceeding the joint recommendation was therefore substantively unreasonable given the unwarranted sentencing disparity.

But this ignores that the court offered a plausible and supported rationale for giving Diaz a harsher sentence. In Diaz's case, the court identified two aggravating facts unique to Diaz's involvement in the kidnapping and murder of WGE as the factual basis for the higher relative sentence. First, the court noted that "[Diaz] was called and given the order to murder the victim." And second, the court noted Diaz's participation in burning the

Camry after the murder, which it concluded "appears to be an attempt to . . . eliminate any determination that the victim was inside the Camry." Together, these unobjected to facts, which weigh on Diaz's relative culpability, "provide[] a plausible explanation" for the perceived disparity resulting in an "overall result" that is "defensible." United States v. Torres-Landrúa, 783 F.3d 58, 68 (1st Cir. 2015) (quoting United States v. Trinidad-Acosta, 773 F.3d 298, 321 (1st Cir. 2014)). Because the district court had a supportable basis for the perceived inconsistency in sentencing, Diaz's claim that his sentence was substantively unreasonable based on an unwarranted sentencing disparity fails. Accordingly, we conclude that the district court did not abuse its discretion in sentencing Diaz to 240 months'.

## III. Conclusion

For the foregoing reasons, we affirm the sentence imposed by the district court.