# United States Court of Appeals
## For the First Circuit

No. 16-2045

UNITED STATES OF AMERICA,

Appellee,

v.

TRACY ANGIOLILLO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Lynch, Selya and Thompson,
Circuit Judges.

Julia Pamela Heit on brief for appellant.
Stephen G. Dambruch, Acting United States Attorney, and
Donald C. Lockhart, Assistant United States Attorney, on brief for
appellee.

July 20, 2017

**SELYA**, **Circuit Judge**. Lurking in the penumbra of this case is an unsettled question about the scope of a waiver-of-appeal provision. Although we identify that question, we assume, without deciding, that the waiver is inapplicable in this instance. With that assumption in place, we reach the merits of the appeal and affirm the judgment below.

## I. BACKGROUND

We draw the relevant facts from the unchallenged portions of the presentence investigation reports and the record of the resentencing hearing. See United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009); United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991).

On February 22, 2007, defendant-appellant Tracy Angiolillo met a man (who turned out to be an undercover agent) in a hotel parking lot in Pawtucket, Rhode Island. During the encounter, the appellant gave the undercover agent $100, 1.15 grams of cocaine base (crack cocaine), and .46 grams of heroin in exchange for two semi-automatic firearms. After the swap was completed, the authorities arrested the appellant and read him his Miranda rights. See Miranda v. Arizona, 384 U.S. 436, 444-45 (1966). He admitted trading cash and controlled substances for the guns.

In due course, the government filed an information charging the appellant with being a felon in possession of two

firearms (count 1), see 18 U.S.C. § 922(g)(1), distribution of cocaine base (count 2), see 21 U.S.C. § 841(a)(1), and distribution of heroin (count 3), see id. At around the same time, the government filed a supplemental information alleging that the appellant fell within the ambit of the Armed Career Criminal Act (ACCA), see 18 U.S.C. § 924(e), because he had three prior convictions for violent felonies or serious drug offenses. The ACCA, where applicable, requires a mandatory minimum sentence of 15 years for violations of section 922(g).

The appellant pleaded guilty to all three counts pursuant to a written plea agreement (the Agreement). The Agreement included a provision waiving his right to appeal as long as the court sentenced him within the applicable guideline sentencing range (GSR).

The probation office prepared a presentence investigation report (PSI Report), which confirmed that the ACCA applied to the appellant's case. Taking that as a given and making a number of other adjustments (including a career offender enhancement, see USSG §4B1.1), the PSI Report calculated the appellant's GSR to be 188-235 months. The district court accepted this calculation and sentenced the appellant to three concurrent bottom-of-the-range 188-month terms of immurement. No appeal was taken.

While the appellant was serving his prison sentence, he twice moved for a reduction of his sentence (once in 2013 and again in 2014).[1]  Both motions were denied.  The appellant then took another tack: on August 4, 2015, he moved to vacate his sentence under 28 U.S.C. § 2255.  This effort was premised on Johnson II, in which the Supreme Court held that the definition of a violent felony in the residual clause of the ACCA was so vague as to work an unconstitutional denial of due process.  See Johnson v. United States (Johnson II), 135 S. Ct. 2552, 2557 (2015).[2]  While the appellant's section 2255 motion was pending, the Supreme Court made pellucid that its decision in Johnson II was substantive and, thus, retroactive.  See Welch v. United States, 136 S. Ct. 1257, 1265 (2016).  At that juncture, the government conceded that the appellant could no longer be viewed as subject to the ACCA, and

---

[1] The appellant filed these motions under 18 U.S.C. § 3582(c), which provides that a district court may reduce a previously imposed sentence if certain conditions are satisfied.

[2] The residual clause of the ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that . . . involves conduct that presents a serious potential risk of physical injury to another."  Johnson II, 135 S. Ct. at 2555-56 (emphasis omitted) (quoting 18 U.S.C. § 924(e)(2)(B)).  The Court found this language problematic because it left uncertain both the way to measure risk of physical injury and the amount of risk that qualified a crime as a violent felony.  See id. at 2557-58.  These indeterminacies "produce more unpredictability and arbitrariness than the Due Process Clause tolerates."  Id. at 2558.

the district court, without objection, vacated the appellant's sentence and ordered resentencing.

In anticipation of resentencing, the probation office prepared a new version of the PSI Report. This version concluded that the appellant's GSR, calculated without reference to the ACCA but still including the career offender enhancement, was 151-188 months. The district court thereupon convened a resentencing hearing, and both the court and the parties accepted the accuracy of the reconstituted GSR.

At the hearing, the appellant argued for a time-served sentence on all counts. The government argued for a 120-month sentence on count 1 and concurrent 151-month sentences on counts 2 and 3, with full credit for time served. The district court sided with the government and sentenced the appellant to 120 months' imprisonment on count 1 and 151 months' imprisonment on counts 2 and 3, giving full credit for time served and specifying that all terms of imprisonment would run concurrently.[3] This timely appeal followed.

---

[3] The lower sentence on count 1 reflects the fact that, stripped of an ACCA enhancement, any period of imprisonment under count 1 was capped at 120 months. See 18 U.S.C. § 924(a)(2). Since the appellant has fully served his prison sentence on count 1, we treat his appeal, consistent with the briefing, as targeting the amended sentences imposed on counts 2 and 3.

## II. ANALYSIS

As a threshold matter, the government argues that this appeal is barred by the waiver-of-appeal provision contained in the Agreement. By its terms, this provision precludes the appellant from appealing any within-the-range sentence. Although the government acknowledges that the Agreement makes no reference to resentencing, it nonetheless asserts that "there is nothing in the text of the appeal waiver or in the language of the [Agreement] that would render the waiver inapplicable in this context." Construing this silence favorably to its position, the government contends that the within-the-range sentence imposed at resentencing falls within the compass of the waiver.

The appellant demurs. He points out that the government has not identified a single case in which a court has applied a waiver-of-appeal provision to pretermit an appeal from a resentencing. Waivers of appeal are to be construed narrowly, see United States v. Fernández-Cabrera, 625 F.3d 48, 51 (1st Cir. 2010); United States v. Teeter, 257 F.3d 14, 23-24 (1st Cir. 2001), and in the appellant's view, the plain terms of the Agreement extend only to his "sentence" — not to any subsequently imposed resentencing. If the government wanted to limit his right to appeal from a resentencing, the appellant insists, the Agreement could have — and should have — included a specific term to that effect.

To be sure, this concatenation of events poses a novel question, and the correct answer to that question is not readily apparent. As we recently have admonished, though, "courts should not rush to decide unsettled issues when the exigencies of a particular case do not require such definitive measures." Privitera v. Curran (In re Curran), 855 F.3d 19, 22 (1st Cir. 2017). This is such a case. Even if we assume two preliminary points in the appellant's favor — that the appeal waiver does not extend to resentencings and that the appellant has not forfeited his right to contest the waiver by failing to include an argument to that effect in his opening brief — the record discloses no grounds upon which to vacate the appellant's new sentence. We explain briefly.

In a sentencing appeal, the customary praxis is first to review any challenges to the procedural integrity of the sentence and then to review any challenge to its substance. See Gall v. United States, 552 U.S. 38, 51 (2007); United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). Here, however, the appellant makes only a bottom-line challenge to his newly imposed sentence: he strives to persuade us that the sentence is substantively unreasonable, given considerations such as his troubled childhood, his poor health, the mistreatment he endured while incarcerated, and the Sentencing Commission's recent recommendations to Congress

- 7 -

regarding modifications to the career offender guideline. We are not convinced.

We review the appellant's preserved claim of substantive unreasonableness for abuse of discretion. See United States v. Ruiz-Huertas, 792 F.3d 223, 228 (1st Cir.), cert. denied, 136 S. Ct. 258 (2015). We start with first principles: the district court must evaluate an amalgam of factors in fashioning a condign sentence, see 18 U.S.C. § 3553(a), but the "weighting of those factors is largely within the court's informed discretion," United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011). In any given case, there is more than one reasonable sentence; there is a range of reasonable sentences. See Martin, 520 F.3d at 92 (noting that there is likely to be an "expansive" universe of reasonable sentences in any particular case). This makes perfect sense: reasonableness is the touchstone of the inquiry and, in the last analysis, "reasonableness is a protean concept." Id.

Of course, the discretion vested in a sentencing court, though broad, is not unbounded. With respect to any sentence imposed, the court must supply "a plausible sentencing rationale" and reach "a defensible result." Id. at 96. It is against this backdrop that we examine the challenged 151-month sentence.

We turn first to the sentencing court's rationale. Before imposing the sentence, the court considered the appellant's checkered criminal history, which featured an array of convictions

beginning at age 18 and continuing virtually unabated until the commission of the crimes at issue here. These convictions added up to 21 criminal history points — more than enough to ensure the appellant's placement for sentencing purposes in the highest criminal history category (CHC) — VI. In its discussion, the court took pains to observe that the appellant's 21 criminal history points were appreciably more than the 13 points necessary to place a defendant in CHC VI. Thus, CHC VI was, in effect, an "underrepresentation" that failed to "capture the many, many convictions and . . . violations of bail and probation" that formed the appellant's extensive criminal record.

In addition, the court commented specifically on the appellant's conduct while in custody. The court noted that the records of the Bureau of Prisons memorialized over a dozen disciplinary incidents, some as recent as 2015. Taken in the ensemble, these infractions were, the court concluded, "indicative of a lack of impulse control, a lack of maturity, [and] a lack of respect for authority." The court explained that the appellant's criminal history, coupled with his unruly behavior while in custody, counseled against accepting the appellant's invitation to impose a time-served sentence. In the court's view, a sentence at the low end of the GSR was necessary in order to protect the public.

To pass the test of plausibility, a district court's sentencing rationale need not be ironclad. See United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006). The court's sentencing rationale in this case, though not unarguable, is certainly reasonable. No more is exigible to pass the test of plausibility. Cf. Ruiz-Huertas, 792 F.3d at 226-27 (explaining that "judgment calls" normally fall within the scope of a sentencing court's discretion).

This brings us to the defensibility of the sentencing outcome, that is, whether "the punishment fit[s] the crime." United States v. Narváez-Soto, 773 F.3d 282, 289 (1st Cir. 2014). We need not find a perfect fit; rather, we must only determine whether the sentence falls within the wide universe of reasonable sentences for the crimes of conviction. With respect to such an inquiry, the fact that the sentence is within a properly calculated guideline sentencing range is entitled to significant weight. See Rita v. United States, 551 U.S. 338, 347 (2007); United States v. Coombs, 857 F.3d 439, 452 (1st Cir. 2017). Seen in this light, challenging a bottom-of-the-range sentence is a heavy lift. The appellant's arguments are not strong enough to accomplish such a lift.

In support of his claim that his sentence is overly harsh, the appellant cites his troubled childhood, his physical and mental health, and the mistreatment that he allegedly received

- 10 -

while incarcerated.  He says that, as a child, he suffered repeated sexual abuse and was exposed to lead poisoning.  Moreover, he has an injured leg, suffers from diabetes, and has a portfolio of psychiatric problems, including an anxiety disorder, a bipolar condition, and schizophrenia.  He adds that, while in custody, he was physically assaulted on multiple occasions, thereby exacerbating his health issues.  And prior to his incarceration, he struggled with drug and alcohol dependency.

These are mitigating factors, and the appellant argues that they should have led the sentencing court to vary downward from the GSR.  Relatedly, he argues that, given his age (48 at the time of resentencing), his life of crime is behind him — a circumstance that also supports a downwardly variant sentence. But the appellant's compendium of potentially mitigating factors is counterbalanced by a compendium of aggravating factors, not the least of which are his prolific criminal record and his long string of disciplinary infractions while incarcerated.  Given this mixed picture, the district court's decision to impose a sentence within but at the low end of the GSR is an easily defensible outcome.[4]

---

[4] The appellant also invokes the Sentencing Commission's 2016 Report to Congress (the Report), in which the Commission recommends that career offender enhancements be reserved for those career offenders who have committed felony crimes of violence rather than those (like the appellant) who are career offenders by reason of other kinds of offenses.  See U.S. Sentencing Comm'n, 2016 Report to the Congress: Career Offender Sentencing Enhancements 44 (2016).  The district court considered and rejected this argument,

We need go no further.  For the reasons elucidated above, we hold that the appellant's 151-month sentence is substantively reasonable.

## III.  CONCLUSION

The judgment of the district court is

**Affirmed.**

---

reasoning that the appellant's lengthy criminal history weighed against leniency on account of the Report's hypothesis.  This sort of weighing of factors is emblematic of the type of function that a sentencing court must perform, see Clogston, 662 F.3d at 593, and the record reveals no sound basis for second-guessing the district court's thoughtful evaluation.  That is especially true where, as here, the Report is merely a set of recommendations, without any binding effect.  Cf. United States v. Demers, 842 F.3d 8, 15 n.6 (1st Cir. 2016) (observing that "[w]e must decide [an] appeal on the basis of the law as it stands, not on the basis of the law as it might someday be").