# United States Court of Appeals
## For the First Circuit

No. 23-1939

UNITED STATES OF AMERICA,

Appellee,

v.

BRIAN ELLIOTT,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Landya B. McCafferty, U.S. District Judge]

Before

Kayatta, Selya, and Gelpí,
Circuit Judges.

Michael B. Skinner and Law Office of Michael B. Skinner on
brief for appellant.
Jane E. Young, United States Attorney, and Aaron Gingrande,
Assistant United States Attorney, on brief for appellee.

August 27, 2024

**SELYA**, **Circuit Judge**. Defendant-appellant Brian Elliott challenges his within-the-range incarcerative sentence of 120 months, which followed his guilty plea to drug and firearm violations. See Fed. R. Crim. P. 11(c)(1)(A)-(B). For the reasons elucidated below, we conclude that the district court did not abuse its discretion in applying a six-level enhancement for assaulting a police officer during either the offense of conviction or the offender's flight therefrom. See USSG §3A1.2(c)(1). We further conclude that the court appropriately weighed the sentencing factors made relevant by 18 U.S.C. § 3553(a). Given these conclusions, we affirm the challenged sentence.

## I

We briefly rehearse the relevant facts and travel of the case. "Where, as here, a sentencing appeal follows a guilty plea, we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing." United States v. Rivera-Gerena, __ F.4th __, __ (1st Cir. 2024) [No. 23-1066, slip op. at 2] (quoting United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009)).

## A

On an evening in May of 2021, a police officer in Goffstown, New Hampshire, observed a vehicle being driven on a public highway without the use of headlights. The officer

activated the emergency lights on his patrol car and attempted to compel the offending vehicle to pull over to the side of the road. The vehicle did not oblige but, rather, maintained its speed.

After the officer activated the patrol car's siren, the vehicle's speed increased, and it crossed the center line, traveling on the wrong side of the road. The officer continued the chase, but he could not maintain a close tail due to the vehicle's erratic path. In a subsequent police interview, the appellant admitted that he was the driver of the errant vehicle that the officer was pursuing.

The chase eventually proved fruitful, and the pursued vehicle came to a halt. When the officer caught up and parked behind the stopped vehicle, the appellant exited the driver's side door and started to flee. The officer chased the appellant on foot through a mercantile parking lot and up a chain link fence. From his perch on the fence, the officer warned the appellant that — if he did not stand down — the officer would deploy his taser. The officer testified that the appellant — in response to this warning — aimed a .45 caliber semiautomatic handgun at him and exclaimed, "I have a gun." According to the officer, this exclamation was followed by the appellant's admonition that "I'm gonna shoot," "I'm gonna shoot you," or something to that effect.

The officer scrambled to take cover, while the appellant beat a hasty retreat. Other officers arrived shortly thereafter,

but they could not locate the appellant anywhere in the area. Withal, the officer who had initiated the pursuit came across a backpack that he had seen the appellant wearing during the chase. The backpack contained over 100 rounds of .45 caliber ammunition, several rounds of twelve-gauge ammunition, and approximately 120 grams of fentanyl. A local business owner later informed the authorities that he had discovered a revolver near the scene.

The appellant's freedom was short-lived: two days later, the authorities located him at a hotel in Manchester, New Hampshire. They arrested the appellant and recovered a .45 caliber pistol, one round of .45 caliber ammunition, and a small amount of fentanyl. In a subsequent interview, the appellant admitted to possessing both the revolver that had been found near the fence and the pistol recovered from the hotel room. And even though the appellant contests to possessing the fentanyl in the backpack, he asserted that he had "found" it.

**B**

In due course, a federal grand jury sitting in the District of New Hampshire returned an indictment against the appellant, which embodied four counts: count 1 charged him with possession with intent to distribute at least forty grams of fentanyl, see 21 U.S.C. § 841(b)(1)(B); counts 2 and 4 charged him with possession of firearms and ammunition after having been convicted of a felony, see 18 U.S.C. § 922(g)(1); and count 3

charged him with possession of a firearm in furtherance of a drug trafficking crime, see id. § 924(c)(1)(A). After some preliminary skirmishing, the appellant agreed to plead guilty to counts 1, 2, and 4 in exchange, inter alia, for the government's agreement to abandon count 3 and to recommend a sentence within the guideline sentencing range. See Fed. R. Crim. P. 11(c)(1)(A)-(B). At the change-of-plea hearing, the district court accepted the plea agreement.

The PSI Report recommended a base offense level of twenty-four based on the drug quantity (forty-plus grams of fentanyl) stipulated in the plea agreement. See USSG §2D1.1(c)(8). The parties, however, remained at odds over the applicability vel non of a six-level enhancement for assaulting a law enforcement officer during the offense of conviction or flight therefrom. See id. §3A1.2(c)(1).

At the disposition hearing, the court heard testimony from the pursuing officer who described the encounter in which the appellant allegedly pointed a firearm at him. The court found this testimony credible and applied the enhancement. With other adjustments, not controverted here, the court calculated a total offense level of twenty-nine. Combined with the appellant's criminal history category (III), this total offense level yielded a guideline sentencing range of 108 to 135 months.

In considering the statutory sentencing factors, see 18 U.S.C. § 3553(a), the court recognized several mitigating items, such as the appellant's childhood struggles and his untreated drug addiction. It proceeded to weigh these items against the seriousness of the offense conduct and the appellant's extensive criminal record (which included several probation violations). The court emphasized the extreme risks posed by both fentanyl and firearms. It added that the appellant's decision to point a gun at a police officer was especially troubling. With these considerations in mind, the court concluded that a 120-month incarcerative term "adequately reflect[ed] the seriousness of this offense, promot[ed] respect for the law, provid[ed] just punishment, afford[ed] adequate deterrence, general and specific, and provid[ed] protection to the public for further crimes" that the appellant might commit. The court proceeded to impose concurrent 120-month sentences on the counts of conviction — sentences that were in the bottom half of the guideline sentencing range.

This timely appeal followed.

## II

In this venue, the appellant presses two assignments of error. First, he asserts that the district court erred by applying the enhancement for assaulting a police officer during the commission of an offense or flight therefrom. See USSG

§3A1.2(c)(1). Second, he asserts that the district court imposed a substantively unreasonable sentence. Neither assertion is persuasive.

## A

When confronted with a defendant's appeal of his sentence, "[w]e first determine whether the sentence imposed is procedurally reasonable (that is, free from reversible error in its procedural aspects) and then determine whether it is substantively reasonable." United States v. Demers, 842 F.3d 8, 12 (1st Cir. 2016). Within this bifurcated structure, "we review the [sentencing] court's interpretation and application of the sentencing guidelines de novo and assay any subsidiary findings of fact for clear error." United States v. Walker, 665 F.3d 212, 232 (1st Cir. 2011). The clear error standard is demanding. See United States v. Matos, 328 F.3d 34, 39-40 (1st Cir. 2003). Under its auspices, we will not "disturb either findings of fact or conclusions drawn therefrom unless the whole of the record compels a strong, unyielding belief that a mistake has been made." Id. at 40.

## B

We start with the appellant's claim of procedural error. For a sentence to pass procedural muster, the sentencing court must have correctly calculated the guideline sentencing range. See Demers, 842 F.3d at 12. Here, the appellant contends that his

guideline sentencing range was impermissibly inflated because the court erroneously applied the section 3A1.2(c)(1) enhancement for assaulting a police officer during the offense or flight therefrom. In particular, he challenges the officer's testimony that he (the appellant) drew and pointed his firearm and, thus, assaulted the officer while fleeing. As we explain below, this challenge lacks force.

Of course, the government must prove the applicability of a sentencing enhancement by a preponderance of the evidence. See Walker, 665 F.3d at 232. For the section 3A1.2(c)(1) enhancement to apply, the defendant must have known that his actions would likely cause an officer to fear that he would face the prospect of substantial bodily injury. See United States v. Lee, 199 F.3d 16, 17-19 (1st Cir. 1999). Where, as here, the sentencing court relied on witness testimony to invoke the enhancement, our review of the court's appraisal of that testimony is for clear error. See Walker, 665 F.3d at 232. Without "objective evidence that contradicts a witness's story or a situation where the story itself is so internally inconsistent or implausible that no reasonable factfinder would credit it, . . . 'the ball game is virtually over' once a district court determines that a key witness is credible." United States v. Guzmán-Batista, 783 F.3d 930, 937 (1st Cir. 2015) (quoting Rivera-Gómez v. de Castro, 900 F.2d 1, 4 (1st Cir. 1990)).

So it is in this case. The sentencing court supportably determined that the officer's testimony recounting the appellant's actions while fleeing was credible. The appellant neither presents countervailing evidence nor calls to our attention any internal inconsistency or implausibility that suffices to undermine the challenged testimony.

To fill this void, the appellant offers several reasons as to why we should discredit the officer's testimony and set aside the district court's assessment. For one thing, the appellant points out that the pursuing officer did not claim to see him carrying a firearm during the chase. For another thing, the appellant points out that the security footage did not capture the alleged assault. Moreover, the officer failed to turn on his body camera until after the alleged assault. Then, too, the officer claimed to have informed his supervisor and his dispatcher about the assault, but neither of those officers reported this detail. Finally, the police department to which the officer belonged sanctioned him for dishonesty in a 2018 report unrelated to the offenses at issue here.

With these facts as a predicate, the appellant suggests that no evidence directly affirms the pursuing officer's account of the assault. And in addition, the circumstances suggest a mistaken or fabricated account of the events. Consequently — the

appellant insists — the sentencing court could not have rested its decision to apply the enhancement on such a porous foundation.

The appellant's challenge is unconvincing. That the officer did not see a firearm during the chase until the appellant pointed it at him does not render it unlikely that the appellant was carrying one. So, too, the absence of security footage recording the assault does not, in and of itself, disprove the officer's account. At most, it amounts to the absence of corroborating evidence.

In any event, the security footage was not simply a blank slate. It did show the appellant leaving his vehicle to continue his flight on foot — and there appeared to be a firearm in his hand. What is more, officers recovered firearms and ammunition near the route of the chase and in the appellant's hotel room (when they arrested him). These facts strongly suggest that the appellant possessed a firearm similar to the one that the pursuing officer described.

Nor does the officer's failure to activate his body camera carry sufficient weight to bolster the appellant's position. After all, that omission is subject to competing inferences. On the one hand, it may have been an intentional act designed to cover up ensuing misconduct; on the other hand, it may have been an understandable oversight in the heat of the moment. There was no clear error in the district court's decision to draw the latter

inference.  See Valentín v. Hosp. Bella Vista, 254 F.3d 358, 367 (1st Cir. 2001) ("[T]he case law makes clear that a district court's choice between two plausible, but conflicting, interpretations of a factual scenario cannot amount to clear error."); see also Guzmán-Batista, 783 F.3d at 937-38 (explaining that, when defendant presented "compelling evidence" of his version of events that "create[d] two possible alternative versions of the events," sentencing court's choice between those alternatives could not have been clearly erroneous).  Much the same can be said for the absence of any mention of the assault in some of the police reports.

The short of it is that some of the circumstances surrounding the alleged assault may be thought to point in different directions.  But because these circumstances leave room for differential factfinding, it was the sentencing court's prerogative to draw such reasonable inferences as it deemed appropriate from the facts.

To be sure, the fact that the officer had lied in the past may raise credibility concerns.  But such concerns are predominantly the province of the sentencing court.  See United States v. St. Cyr, 977 F.2d 698, 706 (1st Cir. 1992) ("In the sentencing phase, credibility determinations lie within the domain of the district court.").  As such, they are largely beyond our purview on appeal.  See Guzmán-Batista, 783 F.3d at 937 ("[A] challenge based on a district court's credibility determination

'can virtually never be clear error.'" (quoting Anderson v. City of Bessemer, 470 U.S. 564, 575 (1985))).

To say more about this claim of error would be supererogatory. The appellant has identified certain weaknesses in the government's evidentiary presentation, but in the last analysis, he simply does not provide any compelling basis in law or fact such as would justify disturbing the district court's application of the challenged enhancement. Clear error is clearly absent.

## C

This leaves the appellant's claim that his sentence was substantively unreasonable. In support, he argues that the sentencing court ignored several mitigating factors that counseled in favor of a briefer term of incarceration. Our review of this claim of error is for abuse of discretion. See Gall v. United States, 552 U.S. 38, 56 (2007).

A sentence is substantively reasonable if it "reflects 'a plausible sentencing rationale and a defensible result.'" United States v. Soto-Soto, 855 F.3d 445, 450 (1st Cir. 2017) (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)). There is not one reasonable sentence in any given case but, rather, a wide universe of reasonable sentences. See United States v. Rodríguez-Adorno, 852 F.3d 168, 177 (1st Cir. 2017). A sentence that falls within the guideline sentencing range for a given offense

is rarely outside the universe of reasonable sentences for that offense. See United States v. Carrasquillo-Vilches, 33 F.4th 36, 45 (1st Cir. 2022) ("[A] sentence — like this one — that falls 'within a properly calculated guideline sentencing range is entitled to significant weight.'" (quoting United States v. Angiolillo, 864 F.3d 30, 35 (1st Cir. 2017))). It follows that a defendant who challenges a within-the-range sentence must bear a heavy burden. See United States v. Pelletier, 469 F.3d 194, 204 (1st Cir. 2006). In the case at hand, the appellant has failed to shoulder that burden.

To begin, the district court explained that it had considered many of the mitigating factors to which the appellant now adverts. For instance, the court acknowledged the appellant's childhood struggles and his untreated drug addiction.

To be sure, the sentencing court did not address each and every mitigating factor — but it was not obliged to do so. See Rivera-Gerena, __ F.4th at __ [No. 23-1066, slip op. at 9-10]. When a sentencing court imposes a within-the-range sentence and the record shows that the court listened to the defendant's arguments and supporting evidence, a reviewing court may infer that "[t]he judge then simply found the[] circumstances insufficient to warrant a sentence lower than the Guidelines range." Rita v. United States, 551 U.S. 338, 358 (2007); see Rivera-Gerena, __ F.4th at __ [No. 23-1066, slip op. at 11]. This is such a case: the mere fact

"[t]hat the sentencing court chose not to attach to certain of the mitigating factors the significance that the appellant thinks they deserved does not make the sentence unreasonable." United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011).

Here, moreover, the court identified two specific considerations that provided ample support for the sentence imposed. First, it emphasized the danger that the appellant had created for himself and the community by distributing fentanyl and possessing firearms with a large supply of ammunition. The lethality of this conduct hardly can be doubted.

We hasten to add that these dangers were not merely theoretical. As the district court observed, one of these dangers became a stark reality when the appellant decided to pull a gun on the pursuing officer. In the court's view, reasonably held, this conduct "was dangerous[,] could have gotten [the appellant] killed[,] and certainly threatened a police officer."

Second, the court emphasized the "concerning and persistent" nature of the appellant's "rather lengthy criminal history and history of probation violations." This was a reasonable viewpoint, and we give it weight. See Rivera-Gerena, __ F.4th at __ [No. 23-1066, slip op. at 10].

To sum up, we conclude that the stated reasons constituted sufficient justification for the sentence imposed because they reflect the seriousness of the offense and the need

to afford adequate deterrence, to protect the public from further crimes, and to promote respect for the law.  See 18 U.S.C. § 3553(a)(2)(A)-(C).    Put another way, the district court's sentencing rationale was plausible.  The appellant has failed to show how the court abused its discretion by weighing the aggravating circumstances heavily while correspondingly discounting the mitigating evidence.  See United States v. Madera-Ortiz, 637 F.3d 26, 30 (1st Cir. 2011) (holding that defendant who challenges within-range sentence needs to "adduce fairly powerful mitigating reasons and persuade us that the district judge was unreasonable in balancing pros and cons despite the latitude implicit in saying that a sentence must be 'reasonable'" (quoting United States v. Navedo-Concepción, 450 F.3d 54, 59 (1st Cir. 2006))).  To cinch the matter, the end result of the sentencing process — a sentence in the bottom half of the guideline sentencing range — was well within the wide universe of reasonable sentences and, thus, was readily defensible.  Viewed against this backdrop, the appellant's claim of error founders.

## III

We need go no further.  For the reasons elucidated above, the judgment of the district court is


**Affirmed**.