# United States Court of Appeals
## For the First Circuit

No. 23-1224

UNITED STATES OF AMERICA,

Appellee,

v.

DOMINGO EMANUEL BRUNO-COTTO,

Defendant, Appellant.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernández, U.S. District Judge]


Before

Gelpí, Montelcalvo, and Aframe,
Circuit Judges.


Isabelle C. Oria Calaf, on brief for the appellant.

Gabriella S. Paglieri, with whom W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.


October 22, 2024

**AFRAME**, **Circuit Judge**.  Defendant Domingo Emmanuel Bruno-Cotto pleaded guilty to two counts of carjacking and one count of kidnapping based on his participation in a multi-day crime spree.  Concluding that Bruno-Cotto's conduct, which included multiple sexual assaults against the same victim, demonstrated unusual cruelty, the district court imposed a 208-month sentence, twenty months above the advisory guideline range.

On appeal, Bruno-Cotto contends that the sentence was procedurally flawed on the ground that the district court used unreliable hearsay to assess his conduct.  He also argues that the sentence was substantively unreasonable because it was longer than the sentence imposed on his co-defendant, Randy Rivera-Nevaréz, and because it did not adequately account for certain mitigating factors.  We affirm.

We describe the facts as set forth in the plea agreement and uncontested presentence report.  United States v. Spinks, 63 F.4th 95, 97 (1st Cir. 2023) (citing United States v. Ubiles-Rosario, 867 F.3d 277, 280 n.2 (1st Cir. 2017)).

Early on August 23, 2019, an Uber driver went to retrieve passengers in Toa Baja, Puerto Rico.  There, Bruno-Cotto and two confederates, including Rivera-Nevaréz, met the driver with guns.  Bruno-Cotto gave orders to the driver and sat in the backseat.  He asked the driver if he had any money, and the driver handed over

his wallet. Bruno-Cotto then told the driver to proceed to a restaurant and park behind a tree. There, Bruno-Cotto pointed a long gun at the driver and demanded that the driver show him how to use the Uber application on the driver's cellphone. Bruno-Cotto then released the driver after taking his phone. He warned the driver that he had people in the area who would kill him if he reported to the police. Bruno-Cotto and his confederates left in the driver's car.

Later the same day, Bruno-Cotto and the others involved in the Uber carjacking received a request for a ride on the driver's Uber application. They met the passenger, who needed a ride to the airport, while Bruno-Cotto hid in the trunk. En route to the airport, Bruno-Cotto and his partners brandished firearms and announced an assault. They demanded that the passenger relinquish his ATM PIN number before taking his ATM card and money. After completing the assault and robbery, Bruno-Cotto and his confederates abandoned the passenger at a restaurant in Isla Verde.

Two days later, on the evening of August 25, 2019, Bruno-Cotto, Rivera-Nevaréz, and Rivera-Nevaréz's wife, Julianie Rijos-Rivera, went searching for someone to rob at the Balenario Costa de Oro beach in Dorado. On the way to the beach, the three stopped at a gas station, where Bruno-Cotto purchased condoms which "he placed in his man bag."

Once at the beach, Bruno-Cotto and Rivera-Nevaréz told Rijos-Rivera to remain in the car. Bruno-Cotto, carrying a black rifle, and Rivera-Nevaréz, carrying a silver pistol, proceeded to walk the beach in search of their victims. They came across a man and woman swimming in the ocean. Bruno-Cotto took a wallet, cellphone, and set of keys left behind on the beach. When the man and woman emerged from the water, Bruno-Cotto and Rivera-Nevaréz ordered them to the ground. Bruno-Cotto then told the woman to come with him and, at gun point, instructed her to take off her clothes. Bruno-Cotto forced the woman to perform various sexual acts, including oral and anal sex.

After the assaults, the woman dressed and Rivera-Nevaréz took her to the ocean to wash off. While the woman was washing, Rivera-Nevaréz asked her if she wanted to have sex. The woman declined. Bruno-Cotto then returned, ordered the woman to disrobe for the second time, and sexually assaulted her again, after which she was sexually assaulted by Rivera-Nevaréz. Following these sexual assaults, Bruno-Cotto and Rivera-Nevaréz maced the male victim in the face before leaving the beach in the couple's car. Bruno-Cotto, Rivera-Nevaréz, and Rijos-Rivera drove from the beach to a local gas station to withdraw funds from the woman's bank account using an ATM card that Bruno-Cotto had stolen from her. The woman was later diagnosed with post-traumatic stress disorder

- 4 -

and suffers from anxiety and paranoia. Bruno-Cotto was arrested the day after this incident.

Bruno-Cotto pleaded guilty to one count of carjacking for the Uber-driver incident, 18 U.S.C. § 2119(1); one count of kidnapping for the airport-passenger incident, 18 U.S.C. § 1201(a)(1); and one count of carjacking resulting in serious bodily injury for the beach incident, 18 U.S.C. § 2119(2). In the plea agreement, Bruno-Cotto agreed that he faced a total offense level of 34 under the Sentencing Guidelines. Because Bruno-Cotto was a criminal history category I, he faced an advisory guideline range of 151 to 188 months of imprisonment.

In its sentencing memorandum, the government requested a high-end guideline sentence of 188 months based on its view that Bruno-Cotto was the most culpable of the co-defendants. In this regard, the government noted that Bruno-Cotto was the one who gave the orders to the Uber driver and airport passenger during the August 23 offenses and planned the sexual assaults for the August 25 offense, as demonstrated by his purchasing condoms at the gas station on the way to the beach. The government also highlighted Bruno-Cotto's conduct in instructing the female victim to remove her clothes at gunpoint and perform sexual acts on him.

Bruno-Cotto, in his sentencing memorandum, did not contest any of the facts in the presentence report describing the

offenses. Instead, he described a difficult childhood in which he observed his father abuse his mother and his parents' substantial drug use. These events caused Bruno-Cotto to suffer severe depression, which included attempted suicides. Based on these mitigating factors, Bruno-Cotto requested a sentence of 151 months, the low end of the applicable guideline range.

At the sentencing hearing, the government reiterated its written request for 188 months based on its view that Bruno-Cotto "took a front and center role in each of the three events that he has been charged with and that he was convicted of." For his part, Bruno-Cotto again focused on his difficult childhood and resulting mental health issues. Bruno-Cotto said that whether he was "the biggest culprit" was "a matter of interpretation," but he was not "going to get into those details because it doesn't really matter at this point of the game."

The district court adopted the uncontested presentence report calculation that Bruno-Cotto faced an advisory guideline range of 151 to 188 months of imprisonment. The court concluded, however, that a sentence above the guideline range was warranted. In this regard, the court explained:

> Having considered the facts of this case, and particularly [Bruno-Cotto's] actions and cruelty, a sentence outside of the guideline range is warranted. The Court is not neglecting to balance the defendant's personal circumstances, yet [Bruno-Cotto] acted at all

times in control and with clear intent of accomplishing his objectives.

To support this conclusion, the district court highlighted that Bruno-Cotto gave orders to the Uber driver, including threatening to kill the driver if he did not comply; jumped over the seat and pointed a rifle at the airport passenger; and stopped on the way to the beach to obtain condoms before committing multiple "heinous" sexual assaults against the female victim. The court summarized Bruno-Cotto's conduct as falling outside the guideline heartland because he showed no "hesitation or empathy" and exhibited "cruelty in twice sexually assaulting the female victim." The court also emphasized the enduring traumatic impact of the sexual assaults on the female victim, observing that she will "most likely relive" the serious harm caused by Bruno-Cotto "for the rest of her life." Therefore, the court imposed a 208-month sentence, twenty months above the guideline recommendation.

Bruno-Cotto objected to the sentence on two grounds. First, he claimed that his sentence created an unwarranted disparity with Rivera-Nevaréz's 188-month sentence. Second, more generally, he argued that the sentence imposed was substantively unreasonable. The district court overruled both objections.

Bruno-Cotto's lead argument on appeal is a claim he did not preserve in the district court. He says that the district

court's conclusion that he was at "all times in control" during the offenses was based on hearsay statements from the victims and co-defendants which appeared in the presentence report. He contends that these statements were unreliable, and that the district court therefore should not have considered them in determining his sentence.

The government counters that Bruno-Cotto waived his challenge to the district court's reliance on the hearsay statements in the presentence report because he failed to object to the information included in the report despite having ample opportunity to do so. Thus, the government contends that we should not consider his hearsay claim even for plain error.

For a defendant to waive a claim such that it will receive no appellate consideration, the record must show that the defendant intended to forgo a known right. United States v. Eisom, 585 F.3d 552, 556 (1st Cir. 2009) (citing United States v. Olano, 507 U.S. 725, 733 (1993), and United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002)). But where the record reveals only a failure to bring forth a claim because of "something less deliberate" such as "oversight, inadvertence, or neglect in asserting a potential right," the defendant has only forfeited the claim. Id. (citing United States v. Staples, 202 F.3d 992, 995 (7th Cir. 2000)). A forfeited claim will be considered on appeal

but only for plain error.  Id. (citing Olano, 507 U.S. at 733-34, and Rodriguez, 311 F.3d at 437).

The record does not show that Bruno-Cotto intended to forgo a known right by failing to raise a hearsay objection to information contained in the presentence report.  To be sure, he filed no objections to the report and did not raise any objections at the sentencing hearing.  But there is nothing to suggest that he made a conscious decision to forego a hearsay objection rather than failing to appreciate the potential issue.  Absent evidence of an "intention to forego" the hearsay objection, we will deem the objection forfeited and review it only for plain error.[1]  See Eisom, 585 F.3d at 556.

To meet the plain error standard, Bruno-Cotto must show that there was a clear or obvious error which affected his substantial rights and seriously impaired the fairness, integrity, or public reputation of judicial proceedings. United States v. Rondón-García, 886 F.3d 14, 20 (1st Cir. 2018) (quoting United

---

[1]    The government misreads United States v. Fox, 889 F.2d 357, 359-60 (1st Cir. 1989), to hold that the defendant waived a hearsay claim simply by not objecting to the presentence report. While Fox says that such a claim "will not be addressed for the first time on appeal," id. at 359 (quoting United States v. Curzi, 867 F.2d 36, 44 (1st Cir. 1989)), it then proceeds to provide an explanation for why the argument would fail on the merits, see id. at 359-60.  In accord with the distinction set out above between waiver and forfeiture, the better reading of Fox is that it subjected the hearsay claim to plain error review because waiver would have meant no appellate consideration at all.

States v. Cortés-Medina, 819 F.3d 566, 569 (1st Cir. 2016)). The standard "is not defendant-friendly." United States v. Takesian, 945 F.3d 553, 562 (1st Cir. 2019) (quoting United States v. Rodríguez-Soler, 773 F.3d 289, 294 (1st Cir. 2014)).[2]

Bruno-Cotto has not met the plain error standard because he has not demonstrated that the district court committed a clear or obvious error in relying on the hearsay information contained in the presentence report. Because the Federal Rules of Evidence and the Sixth Amendment right to confront witnesses do not apply at a sentencing hearing, the district court "has broad discretion to accept hearsay evidence at sentencing so long as the court supportably concludes that the information has sufficient indicia of trustworthiness to warrant a finding of probable accuracy." United States v. Rodriguez, 336 F.3d 67, 71 (1st Cir. 2003).

Because Bruno-Cotto did not object to any of the information in the presentence report, the question distills to whether there was some information before the district court which

---

[2] The government makes a second waiver argument. It says that, even assuming plain error review applies, Bruno-Cotto waived the claim because he did not sufficiently develop an argument on how the record shows that he meets the plain error standard. In support of this argument, the government cites United States v. Pabon, 819 F.3d 26, 34 (1st Cir. 2016). However, there we noted that the defendant did not "anywhere cite the four-factor [plain error] test." Id. Here, in contrast, Bruno-Cotto does mention the test and, while his brief does not address the factors one by one, read as a whole, the argument is adequately developed to at least forestall waiver.

was so apparently unreliable that the court plainly erred by not sua sponte disregarding it. There was not. The statements by Rivera-Nevaréz and Rijos-Rivera implicated them in criminal activity, which is an indicium of reliability. See Fed. R. Evid. 804(b)(3). Moreover, the statements by the man and woman victimized by Bruno-Cotto and Rivera-Nevaréz on the beach generally were consistent with each other and included nothing that cast doubt on the statement that Bruno-Cotto had purchased condoms at the gas station before heading to the beach, where he committed the multiple sexual assaults. Finally, Bruno-Cotto admitted to some of the key information in the presentence report which came originally from the victims and co-defendants, including that Bruno-Cotto pointed a gun at the airport passenger during the August 23 kidnapping and assaulted the woman and sprayed mace in the man's face during the August 25 carjacking.

Bruno-Cotto now says that the victims' statements were too vague to consider and that Rivera-Nevaréz and Rijos-Rivera's statements should be disregarded because, given their romantic relationship, they had an incentive to foist the blame on him to minimize their own culpability. Those are arguments Bruno-Cotto could have made before the district court to try to undermine the reliability of certain statements in the presentence report. But those arguments are not so obvious and apparent that the district

court was required to act on them sua sponte.  In short, belated claims of unreliability that, at best, may or may not have succeeded if timely raised, do not establish the clear or obvious error necessary to prevail on plain error review.

We turn next to Bruno-Cotto's substantive reasonableness claims.  These arguments were preserved and so our review is for abuse of discretion.  See United States v. Crocco, 15 F.4th 20, 25 (1st Cir. 2021) (citing United States v. Arsenault, 833 F.3d 24, 28 (1st Cir. 2016)).  A sentence is substantively reasonable so "long as it rests on 'a plausible sentencing rationale' and reflects a 'defensible result.'"  Arsenault, 833 F.3d at 34 (quoting United States v. Perez, 819 F.3d 541, 547 (1st Cir. 2016)).

Bruno-Cotto's first contention is that the sentence was substantively unreasonable because the district court sentenced him to twenty more months in prison than Rivera-Nevaréz.  Bruno-Cotto says that there was no reason to sentence him more harshly than Rivera-Nevaréz since both men signed plea agreements containing identical facts.

One sentencing consideration is "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  A sentence can be substantively unreasonable

where the same judge imposes different sentences on "two identically situated defendants." United States v. Diaz-Serrano, 77 F.4th 41, 48 (1st Cir. 2023) (quoting United States v. Reyes-Santiago, 804 F.3d 453, 467 (1st Cir. 2015)). But, for a sentence to be unreasonable on this basis, the two defendants must be indistinguishable in every meaningful respect that could influence the court's sentencing decision. See id. (citing United States v. Gonzalez, 981 F.3d 11, 23 (1st Cir. 2020)). For this reason, we have rejected substantive reasonableness arguments where one co-defendant played more of a leadership role than the other or where the facts in the presentence report show differences in conduct that support varying degrees of culpability. See, e.g., id. at 48-49.

The presentence report demonstrates material differences between Bruno-Cotto's and Rivera-Nevaréz's conduct. Most prominently, the presentence report indicates that Bruno-Cotto repeatedly assaulted the female victim on the beach whereas Rivera-Nevaréz assaulted her once. That difference alone is enough to support Bruno-Cotto's longer sentence. In addition, the record evidence supports that, at times, Bruno-Cotto assumed more of a leadership role than Rivera-Nevaréz.[3] In this regard, the district

---

[3] Bruno-Cotto now says he cannot be penalized for having more of a leadership role because he did not receive an upward role-in-the-offense adjustment under the Sentencing Guidelines.

- 13 -

court correctly noted that, during the carjacking of the Uber driver, Bruno-Cotto was the one who gave orders and threatened the driver with a gun until the driver taught him how to use the Uber application. These distinctions justify the district court imposing a longer sentence on Bruno-Cotto.

Bruno-Cotto's final contention is that his sentence is too long -- and therefore substantively reasonable -- because, in selecting the sentence, the district court did not adequately account for mitigating factors, including his lack of prior criminal history and mental health diagnosis. But the district court did note these considerations: it recognized Bruno-Cotto's low criminal history category, his "dysfunctional upbringing," and his "history of mental health conditions." The district court concluded that, even after accounting for Bruno-Cotto's "personal circumstances," a sentence above the guideline range was warranted because "[t]he guidelines do not contemplate the dangers of [the] defendant, who harmed various victims within . . . days."

The district court acted within its discretion in sentencing Bruno-Cotto above the guideline range in these

---

U.S.S.G. § 3B1.1. But the question here is not whether he should have received a guideline enhancement as a leader; the question is only whether his conduct demonstrated a comparably larger leadership role than Rivera-Nevaréz such that the district court could rely on that difference to impose varying sentences consistent with 18 U.S.C. § 3553(a)(6). See Gonzalez, 981 F.3d at 23.

circumstances.  Bruno-Cotto's conduct, which included multiple sexual assaults on the same woman, was appropriately described by the district court as "heinous."  Given his egregious conduct, it is apparent that the court gave weight to the mitigating factors in selecting the sentence because the serious offense characteristics present here likely could have supported a longer sentence than the one imposed.  Cf. United States v. Santiago Lozada, 75 F.4th 285, 295-96 (1st Cir. 2023) (affirming as substantively reasonable an upward variance based on convictions for multiple carjacking offenses).

**Affirmed**.