**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 23-1868

UNITED STATES OF AMERICA,

Appellee,

v.

CHRISTOPHER BEAUCAGE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Lance E. Walker, U.S. District Judge]

Before

Montecalvo, Kayatta, and Aframe,
Circuit Judges.

Gene D. Vorobyov for appellant.

Brian S. Kleinbord, Assistant United States Attorney, with whom Darcie N. McElwee, United States Attorney, was on brief, for appellee.

April 15, 2025

**AFRAME**, <u>Circuit Judge</u>.    This is a single-issue sentencing appeal in which Christopher Beaucage contends that his within-guidelines sentence for participating in a drug distribution conspiracy was substantively unreasonable.    We affirm.

Beaucage's offense conduct was as follows.   In October 2021, the police stopped a car driven by Heather Mitchell, Beaucage's girlfriend.   Beaucage and Mitchell's minor son were passengers.   During the stop, the police arrested Beaucage on outstanding warrants.   While searching Beaucage incident to arrest, the police found a wad of cash in his wallet and a small amount of fentanyl in his pocket.   The police then searched the car and uncovered fifty grams of fentanyl under the passenger seat. Beaucage admitted that the fentanyl belonged to him.

Beaucage's arrest led to his detention.   While detained, Beaucage spoke frequently with Mitchell to give her instructions on how to continue managing his drug business.   By monitoring Beaucage's telephone calls, the police learned about Mitchell's drug dealing activities and conducted surveillance to verify the information Beaucage was providing to Mitchell.

After one such call, the police followed Mitchell as she traveled to Lawrence, Massachusetts, at Beaucage's instruction, and watched her receive an apparent drug delivery.  On Mitchell's return to Maine, the police stopped her car and found 510 grams of

fentanyl. Mitchell was released but continued to take drug dealing direction from Beaucage. Based on additional intelligence from the Beaucage-Mitchell calls, the police stopped Mitchell a second time and seized approximately 200 grams of fentanyl and 200 grams of a fentanyl analog.

For this conduct, a grand jury indicted Beaucage for conspiring with Mitchell to distribute and possess with the intent to distribute forty or more grams of fentanyl, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B). In due course, Beaucage pleaded guilty. Accounting for applicable drug weight, his leadership role, and his acceptance of responsibility, Beaucage's presentence report calculated his total offense level at 31 under the United States Sentencing Guidelines. Beaucage also has a substantial criminal history, including multiple convictions for prior drug offenses, which placed him in a criminal history category of V. As a result, Beaucage faced an advisory sentencing guideline range of 168 to 210 months of imprisonment.

At the sentencing hearing, the parties offered no objections to the presentence report. The government advocated for a sentence at the "low end" of the advisory guideline range. The government's sentencing argument highlighted Beaucage's "lengthy criminal history" and his continued participation in fentanyl trafficking activity from jail, but also noted that his "childhood was marked by . . . trauma and abuse."

Beaucage sought a sentence of eighty-four months. In support of his variance request, Beaucage relied primarily on his difficult background. From an early age, Beaucage had a challenging homelife marked by abuse and periodic separation from his parents. Beaucage began using hard drugs around age fourteen. He has also suffered from symptoms of attention-deficit/hyperactivity disorder, post-traumatic stress disorder, anxiety, and depression. As a minor, Beaucage spent time in juvenile detention and resided in several group homes.

As an adult, Beaucage suffers from untreated seizures and Hepatitis C. He has also been in several car accidents that have resulted in head and neck pain. Beaucage is a mason by trade and has a history of working construction jobs for cash. Beaucage has a biological daughter with his ex-wife, Briana, and has also formed a father-like relationship with Briana's other daughter, Destiny. Beaucage has a decades-long substance use disorder, and has teetered between operating at a "functioning level" and being "out of control."

At the sentencing hearing, Beaucage offered an allocution in which he accepted responsibility and indicated that he was "sick of ruining people's lives." Destiny and her boyfriend made statements commenting positively on their relationship with Beaucage.

The district court imposed a 180-month sentence, which was in the middle of the advisory guideline range and twelve months above the government's request. The court focused on Beaucage's "significant role in [the] morbid marketplace" of fentanyl trafficking and the harm that fentanyl has caused to the Maine community. The court further commented that Beaucage seemed "supernaturally dedicated" to his drug trafficking enterprise given that he continued to manage this activity "while in jail." In addition, the court emphasized Beaucage's "robust criminal history that seems devoted in a singular fashion" to drug trafficking. In reaching its determination, the court indicated that it gave weight to Beaucage's substance use disorder and personal history "involv[ing] trauma." Ultimately, the district court explained that "the key sentencing factors" supporting a 180-month sentence were "the seriousness of [Beaucage's] offense," the "importance of providing some level of deterrence," and "protecting the public."

On appeal, Beaucage contends that the 180-month sentence imposed was substantively unreasonable. Beaucage criticizes the district court's sentencing decision in three respects. He contends that the sentence: (1) did not give adequate weight to the mitigating circumstances of his difficult upbringing, present familial support, and prospects for rehabilitation; (2) improperly emphasized the devastating effect of fentanyl trafficking on the

Maine community; and (3) punished him disproportionately to Mitchell, who received a twenty-four-month sentence.

Substantive reasonableness challenges are reviewed for an abuse of discretion. United States v. Díaz-Lugo, 963 F.3d 145, 157 (1st Cir. 2020). That is because "there is not a single reasonable sentence in any given case but, rather, an expansive 'universe of reasonable sentencing outcomes.'" Id. (quoting United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011)). Our task is to determine only whether the sentence imposed falls "within that expansive universe." Id. In so doing, we do not substitute our judgment for the district court's; rather "we look for the hallmarks of a substantively reasonable sentence: 'a plausible sentencing rationale and a defensible result.'" Id. (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)). Vacating a sentence as unreasonable is "particularly unlikely when," as here, "the sentence imposed [fell] within the compass of a properly calculated [guideline sentencing range]." United States v. Ruiz-Huertas, 792 F.3d 223, 228-29 (1st Cir. 2015) (second alteration omitted) (quoting United States v. Vega-Salgado, 769 F.3d 100, 105 (1st Cir. 2014)).

We reject Beaucage's lead argument that the sentence imposed was unreasonable on the ground that the district court failed to provide adequate weight to his mitigating factors. The court stated that it had prepared for Beaucage's sentencing by

"carefully review[ing]" the presentence report, which set forth all the mitigating information that Beaucage highlights on appeal. The court also stated that it had considered the statements of support from Destiny and her boyfriend as well as Beaucage's statement in which he had indicated his desire for change. The court further acknowledged that Beaucage "had a difficult row to hoe" and that it was "taking that into account" in considering the "appropriate sentence."

We have stressed often that "a sentence is not substantively unreasonable simply because the court chose not to attach to certain of the mitigating factors the significance that the defendant thinks they deserve." United States v. Santiago-Lozada, 75 F.4th 285, 296 (1st Cir. 2023) (quoting United States v. Serrano-Delgado, 29 F.4th 16, 30 (1st Cir. 2022)); see also United States v. Elliott, 113 F.4th 168, 175 (1st Cir. 2024) (stating the same). That principle controls here. The district court pointed to aggravating factors warranting the imposition of a substantial sentence, including (1) Beaucage's continued participation in the dangerous fentanyl trade even after his detention and (2) his significant criminal history, including other drug offenses, which demonstrated a substantial possibility of recidivism. Given these significant aggravating factors, the court's selection of a mid-guideline range sentence was consistent with the court's statements that it was considering mitigating

circumstances as part of its sentencing determination. To be sure, Beaucage hoped that the court would conclude that the mitigating circumstances supported additional leniency. But the district court's conclusion otherwise did not make the sentence unreasonable.

Beaucage is also incorrect that the sentence was unreasonable because the district court commented on the significant negative effect that Beaucage's crime -- fentanyl trafficking -- was having in Maine. "We have held . . . that 'the incidence of particular crimes in the relevant community appropriately informs and contextualizes the relevant need for deterrence' and, thus, a sentencing court may consider 'the incidence and trend lines of particular types of crime in the affected community,'" United States v. Díaz-Rivera, 957 F.3d 20, 29 (1st Cir. 2020) (quoting United States v. Flores-Machicote, 706 F.3d 16, 23 (1st Cir. 2013)), so long as the court fulfills "its obligation to base its sentencing determination on case- and offense-specific factors," id. The court followed this approach here.

While the district court did comment on the consequences of the fentanyl epidemic in Maine as part of its explanation about the seriousness of Beaucage's offense, the court's sentencing explanation did not rely exclusively or even primarily on this consideration. Rather, as already explained, the court's primary

foci in selecting the sentence were factors about Beaucage and his crime, namely, his poor criminal record and his decision to continue his drug trafficking activity even after his arrest and detention. See United States v. Rosario-Merced, 109 F.4th 77, 84-86 (1st Cir. 2024) (discerning no error in the district court's consideration of community characteristics alongside individual characteristics in selecting the appropriate sentence).

Finally, the district court did not act unreasonably by imposing a longer sentence on Beaucage than on Mitchell. "A sentence can be substantively unreasonable where the same judge imposes different sentences on 'two identically situated defendants.'" United States v. Bruno-Cotto, 119 F.4th 201, 207-08 (1st Cir. 2024) (quoting United States v. Diaz-Serrano, 77 F.4th 41, 48 (1st Cir. 2023)). "But, for a sentence to be unreasonable on this basis, the two defendants must be indistinguishable in every meaningful respect that could influence the court's sentencing decision." Id. at 208.

There are significant distinctions between Beaucage and Mitchell for sentencing purposes. For starters, Beaucage had a higher offense level based on the undisputed determination that he occupied a leadership role over Mitchell in the conspiracy. See id. (stating that codefendants are not similarly situated when one occupied a leadership role over the other). In addition, Beaucage had a substantial criminal history that placed him near the top of

the guideline classification, while Mitchell fell into the lowest criminal history category.  See <u>United States</u> v. <u>Grullon</u>, 996 F.3d 21, 35 (1st Cir. 2021) (stating that divergent sentences may be justified where the more severely punished defendant has a more substantial criminal history).  Based on these meaningful differences between Beaucage and Mitchell, the district court's decision to sentence Beaucage more harshly than Mitchell was reasonable.

**<u>Affirmed</u>**.